## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                                   )
YOGENDRA SAGAR,                    )
individually and on behalf of all  )
others similarly situated          )
                                   )
                Plaintiff,         )
                                   )        Civil Action
v.                                 )        No. 21-cv-10540-PBS
                                   )
KELLY AUTOMOTIVE GROUP, INC.,      )
                                   )
                Defendants.        )
                                   )
_____)
```

## MEMORANDUM AND ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

November 29, 2021

Saris, D.J.

### INTRODUCTION

Plaintiff Yogendra Sagar has brought this proposed class action, alleging that Defendant Kelly Automotive Group, Inc. (Kelly Auto) sent text messages in violation of the federal Telephone Consumer Protection Act, 47 U.S.C., § 227 (TCPA). Sagar has proposed two classes: (1) all persons in the United States whom Kelly Auto, or someone on its behalf, texted more than one time within a twelve-month period within the four years prior to the filing of this action despite the telephone number being listed on the National Do Not Call Registry for at least thirty days and despite the person not transacting with Kelly Auto in the prior eighteen months or inquiring with Kelly Auto in the prior three

[1]

months (Do Not Call Registry Class), and (2) all persons in the United States whose residential telephone number Kelly Auto, or someone on its behalf, texted within the four years prior to the filing of this action after the person requested not to receive texts and/or calls from Kelly Auto (Internal Do Not Call Class).

Kelly Auto has moved to dismiss this action. It first argues that Sagar lacks Article III standing because he fails to allege a cognizable, concrete injury in fact based on the receipt of three text messages. Kelly Auto next argues that the TCPA provisions in question do not apply to text messages and that Sagar failed to plausibly allege that he was a "residential telephone subscriber" or "residential subscriber." Kelly Auto also moved to strike Sagar's class action allegations pursuant to Fed. R. Civ. P. 12(f), 23(c)(1)(A), and 23(d)(1)(D).

After hearing, Defendant's Motion to Dismiss (Dkt. 18) and Motion to Strike Class Allegations (Dkt. 21) are **DENIED**.

### FACTUAL BACKGROUND

Sagar alleges the following facts. Kelly Auto owns and operates eight motor vehicle dealerships in Massachusetts. In February and March of 2021, it sent at least three marketing text messages to Sagar's cellular telephone. One of the messages included a picture with the words "Presidents' Day Sale *Your New 2021 Rogue is Here*" and a message saying: "Hi Yogendra! Kelly Nissan of Lynnfield is having a [sic] extended Presidents' Day

this weekend. When is a good time to set up a VIP appointment? To opt out type stop[.]" Dkt. 16 at ¶ 10.

Sagar alleges that the cell phone number that was texted is used by him "for personal purposes only and the number is Plaintiff's residential telephone line." Id. at ¶ 13. The number has been registered on the National Do Not Call Registry since December 15, 2004. Sagar has had no business dealings with Kelly Auto since 2015 when he made a request to one of its managers to be placed on its internal do-not-call list. Sagar alleges that Kelly Auto's continued text messages are indicative of a lack of a written policy for maintaining internal do-not-call procedures, a failure to maintain an internal do-not-call list, and a failure to train its personnel in the existence and use of such a list. Sagar further alleges, "[u]pon information and belief" that Kelly Auto sent similar text messages to individuals residing within this judicial district. Id. at ¶ 19.

Sagar alleges that the text messages caused harm, "including invasion of privacy, aggravation, and annoyance," and that they "inconvenienced Plaintiff, caused disruptions to Plaintiff's daily life, caused Plaintiff to waste time dealing with Defendant's unsolicited text message calls, used Plaintiff's phone storage, and depleted Plaintiff's phone battery." Id. at ¶ 23. "Additionally," he alleges, "Defendant's unsolicited messages

violated Plaintiff's substantive rights under the TCPA to be free from harassing calls like Defendant's." Id.

## DISCUSSION

### I.   Motion to Dismiss

Kelly Auto seeks dismissal under Fed. R. Civ. P. 12(b)(1) for lack of standing and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

#### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

#### B. Article III Standing

"The Constitution limits the judicial power of the federal courts to actual cases and controversies." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing U.S. Const. art. III, § 2,

cl. 1).  "A case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" Id. (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). This requirement is "standing."

"[A]t the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016). But "[i]n considering the pre-discovery grant of a motion to dismiss for lack of standing 'we accept as true all well-pleaded factual averments in the plaintiff's . . . complaint and indulge all reasonable inferences therefrom in his favor.'" Katz, 672 F.3d at 70 (quoting Deniz v. Mun'y of Guaynabo, 285 F.3d 142, 144 (1st Cir. 2002)).

Kelly Auto disputes that Sagar has established one of the requirements of standing: an "injury in fact." This requires "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Id. at 71 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Kelly Auto specifically disputes the concreteness of Sagar's alleged injury in fact. "A 'concrete' injury must be 'de facto'; that is, it must actually exist" and be

"'real,' and not 'abstract.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016). "'Concrete' is not, however, necessarily synonymous with 'tangible.'" Id. at 1549. Concreteness merely requires that the plaintiff be "adversely affected" or "aggrieved," which can be established through "an identifiable trifle." United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14 (1973).

Congress cannot create a private right of action that "abandon[s] the requirement that the party seeking review must himself have suffered an injury," Lujan, 504 U.S. at 578 (quoting Sierra Club v. Morton, 405 U.S. 727, 738 (1972)), but Congress can "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." Id. (citing Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 208–12 (1972)). In analyzing concreteness, courts look to "history and the judgment of Congress" for guidance. Spokeo, 136 S. Ct. at 1549 (holding that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" and that because Congress is particularly suited "to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important").

The First Circuit has not yet addressed the issue of whether unsolicited text messages, allegedly infringing on rights protected by the TCPA, can constitute a concrete injury in fact. Only one circuit court has ruled that an unsolicited text message is not a concrete injury under Spokeo, finding that the harm "differ[s] so significantly in degree" from historical torts such as intrusion upon seclusion or trespass to chattels and that "Congress was concerned about 'intrusive invasion[s] of privacy' into the home when it enacted the TCPA" and "a single unwelcome text message will not always involve an intrusion into the privacy of the home in the same way that a voice call to a residential line necessarily does." Salcedo v. Hanna, 936 F.3d 1162, 1170–72 (11th Cir. 2019).

The Fifth and Seventh Circuits have explicitly and persuasively rejected Salcedo as to both history and the judgment of Congress, finding that "unwanted text messages can constitute a concrete injury-in-fact." Gadelhak v. AT&T Servs., 950 F.3d 458, 463 (7th Cir. 2020) (Barrett, J.); Cranor v. 5 Star Nutrition, LLC, 998 F.3d 686, 693 (5th Cir. 2021) ("Salcedo's focus on the substantiality of an alleged harm threatens to make this already difficult area of law even more unmanageable. We therefore reject it.").

As to history, each took issue with the Salcedo court's focus on the degree of harm, rather than the kind of harm. The Cranor

court found that "Salcedo's view of trespass to chattels is substantially narrower than the scope of that action at common law" in the eighteenth century, given that "[a]t common law, a suit for trespass to chattels could be maintained if there was a violation of 'the dignitary interest in the inviolability of chattels.'" 998 F.3d at 693 (quoting United States v. Jones, 565 U.S. 400, 419 n.2 (2012) (Alito, J., concurring in the judgment) (quoting W. Page Keeton et. al, Prosser & Keeton on the Law of Torts § 90 at 87 (5th ed. 1984))). Moreover, "Salcedo's focus on the substantiality of the harm in receiving a single text misunderstands Spokeo" because Spokeo asked whether "an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," id. (quoting Spokeo, 136 S. Ct. at 1549), and so "[o]ur inquiry is focused on the types of harms protected at common law, not the precise point at which those harms become actionable," id. (quoting Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 654 (4th Cir. 2019)). The Gadelhak court similarly found the Salcedo court viewed the tort of intrusion upon seclusion too narrowly—"[t]he harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy." 950 F.3d at 462. And the court also took issue with Salcedo's focus on substantiality:

> The Eleventh Circuit treated the injury in its case as
> abstract partly because common law courts generally
> require a much more substantial imposition—typically,
> many calls—to support liability for intrusion upon
> seclusion. But when <u>Spokeo</u> instructs us to analogize to
> harms recognized by the common law, we are meant to look
> for a "close relationship" in kind, not degree. In other
> words, while the common law offers guidance, it does not
> stake out the limits of Congress's power to identify
> harms deserving a remedy. Congress's power is greater
> than that: it may "elevat[e] to the status of legally
> cognizable injuries concrete, <u>de facto</u> injuries that
> were previously inadequate in law." A few unwanted
> automated text messages may be too minor an annoyance to
> be actionable at common law. But such texts nevertheless
> pose the same <u>kind</u> of harm that common law courts
> recognize—a concrete harm that Congress has chosen to
> make legally cognizable.

<u>Id.</u> at 462–63 (citations omitted). Unwanted text messages involve
the same kind of injury as recognized in the common-law torts of
trespass to chattels and intrusion upon seclusion, even if not in
the same degree, and thus Congress could elevate this injury to
the status of a legally cognizable harm.

As to Congress' judgment, the <u>Cranor</u> court held that, given
the scope of other provisions of the TCPA, "[t]he text of the Act
thus shows Congress sought to remediate 'nuisance and invasion of
privacy' in a broader set of circumstances, not just in the home."
998 F.3d at 691 (noting that the TCPA in other provisions covers
cell phones, emergency telephone lines, and hospital patient
telephone lines). The <u>Gadelhak</u> court agreed that "the undesired
buzzing of a cell phone from a text message, like the unwanted
ringing of a phone from a call, is an intrusion into peace and

quiet in a realm that is private and personal," which "is the very harm that Congress addressed." 950 F.3d at 462 n.1. Moreover, these individually annoying buzzes can form a swarm that carries quite the sting.

The Second and Ninth Circuits found standing in similar circumstances before Salcedo was decided. See Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 93 (2d Cir. 2019) ("[T]ext messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA"); Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) ("[T]he telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA. Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients.").

This Court joins the Second, Fifth, Seventh, and Ninth Circuits in finding that, in light of the TCPA, the receipt of unsolicited telemarketing text messages, on its own, is sufficient to establish a concrete injury in fact. "A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" Van Patten, 847 F.3d at

1043 (quoting <u>Spokeo</u>, 136 S. Ct. at 1459). Sagar has standing to pursue his claim.

### C. Failure to State a Claim under the TCPA

Kelly Auto argues that Sagar's claims do not fall within the scope of the TCPA because he did not receive a "telephone call" as a "residential telephone subscriber."

#### i. "Telephone Call"

Kelly Auto argues that 47 U.S.C. § 227(c), under which both counts arise, does not apply to text messages. Under this provision of the TCPA, "[a] person who has received more than one <u>telephone call</u> within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action. 47 U.S.C. § 227(c)(5) (emphasis added).

There has been much litigation over the meaning of "call" in a neighboring provision of the TCPA: 47 U.S.C. § 227(b)(1)(A). The FCC interpreted this section, which prohibits making calls using automatic telephone dialing systems or artificial or prerecorded messages to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." <u>In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,</u> 18 F.C.C.R. 14014, 14115 (2003). The Ninth Circuit held that this interpretation was entitled to deference under <u>Chevron U.S.A, Inc. v. Natural Resources Defense</u>

Council, Inc., 467 U.S. 837, 843–44 (1984) because it "is consistent with the dictionary's definition of call in that it is defined as 'to communicate with or try to get into communication with a person by telephone'" and because it "is also consistent with the purpose of the TCPA—to protect the privacy interests of telephone subscribers." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009).

In 2016, the Supreme Court wrote, "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016). The Supreme Court alluded to the issue this year, citing Campbell-Ewald Co. in a footnote, but expressly leaving the question unresolved. See Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1168 n.2 (2021) ("Neither party disputes that the TCPA's prohibition also extends to sending unsolicited text messages. . . . We therefore assume that it does without considering or resolving that issue."). The First Circuit has interpreted Campbell-Ewald Co. to hold that "[t]he TCPA also applies to . . . text messages." Breda v. Cellco Partnership, 934 F.3d 1, 4 n.1 (1st Cir. 2019) (involving 47 U.S.C. § 227(b)(1)(A)(iii)).

The FCC has since interpreted § 227(c) to include text messages. See In re Emanuel "Manny" Hernandez; Click Cash Mktg., LLC; & Rock Solid Traffic, 2018 WL 6830220 at *1 (F.C.C. Dec. 21,

2018) ("It is illegal for persons or entities, including advertisers and marketers, to make marketing calls to telephone numbers listed on the DNC. This prohibition includes both voice calls and text messages.").

Kelly Auto has not cited any cases holding that a text message is not a "call" for the purposes of the TCPA. Given the overwhelming weight of authority, this Court finds that Sagar has stated a claim that he received a "telephone call" for the purposes of § 227(c).

    ii.  *"Residential Telephone Subscriber"*

Kelly Auto also argues that 47 U.S.C. § 227(c), under which both counts arise, only covers "residential telephone subscribers," and that Sagar has not adequately alleged that he is a residential telephone subscriber. The TCPA authorizes the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The relevant FCC regulations prohibit calling a "residential telephone subscriber," 47 C.F.R. §64.1200(c)(2), 47 C.F.R. § 64.1200(d), but "[t]he rules set forth in paragraph (c) and (d) . . . are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991.'" 47 C.F.R. § 64.1200(e).

The FCC considered the inclusion of wireless telephone numbers as residential telephone subscribers on the national do-not-call list in that Report and Order. The FCC concluded that "[a]llowing wireless subscribers to register on a national do-not-call list furthers the objectives of the TCPA," considering that "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones" and "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service." 18 F.C.C.R. 14014 at *14038-39. The FCC interpreted the reference to "residential telephone subscribers" to relate to the goal "to curb the 'pervasive' use of telemarketing 'to market goods and services to the home.'" Id. at 14038. "As a practical matter, since determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber, [the FCC] will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers,'" although this "may require a complaining wireless subscriber to provide further proof of the validity of that presumption should [the FCC] need to take

enforcement action." Id. at 14039. The FCC accordingly amended the relevant regulations to include the above-quoted language.

Kelly Auto argues that the FCC interpretation is not worthy of any deference because "the agency's interpretation was completely devoid of any statutory analysis and made no effort to explain or justify the agency's position." Dkt. 19 at 20 (quoting Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC, 982 F.3d 258, 265 (4th Cir. 2020)). The FCC interpreted the statutory focus on residential privacy rights to extend to the use of cell phones as residential lines, see 18 F.C.C.R. 14014 at 14038–39. Indeed, because of the rise in wireless-only households, the FCC reasonably concluded that a person can be disturbed in the home through their cell phone.[1] The FCC's rationale is persuasive: allowing cell phones to be registered on the DNC list furthers the interest in protecting residential privacy, even if not all calls to cell phones will reach the cell phones while they are in a residence.

Alternatively, Kelly Auto argues that Sagar has not alleged any facts supporting his "bare formulaic assertions" that his number is a residential telephone line and that he was the

---

[1] This trend is even more pronounced today. According to the National Center for Health Statistics, 68.0% of adults and 79.1% of children live in wireless-only households. Steven J. Blumberg & Julian V. Luke, National Center for Health Statistics, Wireless Substitution: Early Release of Estimates from the National Health Interview Survey, January–June 2021 1, Nov. 2021, cdc.gov/nchs/data/nhis/earlyrelease/wireless202111.pdf. The percentage of households without a landline is even higher for adults aged 25–29 (85.0%), aged 30–34 (86.1%), or renting their home (81.9%). Id.

subscriber and sole user. This argument is a non-starter. Sagar has plausibly pleaded that he uses his cell phone for personal purposes as a residential line and that he has put it on the National Do-Not-Call Registry. See Rosenberg v. LoanDepot.com, LLC, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) (finding that a plaintiff alleging he "placed his cellular phone number on the National Do Not Call registry and that he uses his cell phone as his residential line" is sufficient to survive a motion to dismiss).

## II. **Motion to Strike Class Allegations**

Kelly Auto moves to strike Sagar's class action allegations. Kelly Auto argues that the "Do Not Call Registry Class" "is an impermissible fail-safe class and is overbroad" and that the "Internal Do Not Call Class" "is a revocation class that implicates a plethora of individualized issues not appropriate for class treatment." Dkt. 22 at 1. It additionally argues that "neither proposed class satisfies the numerosity, commonality and predominance requirements of Rule 23" and that "no amount of discovery or time will allow Plaintiff's two proposed classes to meet the requirements of Rule 23." Id. at 1, 8. Sagar rejects these contentions, and moreover argues that such an inquiry is premature.

### A. Legal Standard

Rule 23(c)(1)(A) requires the court to "determine by order whether to certify the action as a class action" "[a]t an early

practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). "Nothing in the plain language of Rule 23(c)(1)(A) . . . prohibits a defendant from seeking early resolution of the class certification question." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 939–40 (9th Cir. 2009).

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts [may] use their authority under Federal Rule of Civil Procedure 12(f) to delete the complainant's class allegations." Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013). This ruling "is committed to the district court's sound judgment," but "a court should typically await the development of a factual record before determining whether the case should move forward on a representative basis." Id. "[C]ourts should exercise caution when striking class action allegations based solely on the pleadings" because "such motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion," id. (quoting Boreri v. Fiat S.p.A., 763 F.2d 17, 23 (1st Cir. 1985)), and "striking a portion of a pleading is a drastic remedy . . . often sought by the movant simply as a dilatory or harassing tactic," id. (quoting 5C Charles Alan Wright,

et. al., Federal Practice & Procedure § 1380 (3d ed. 2011)). This
caution is warranted and striking class allegations "is even more
disfavored because it requires a reviewing court to preemptively
terminate the class aspects of . . . litigation, solely on the
basis of what is alleged in the complaint, and before plaintiffs
are permitted to complete the discovery to which they would
otherwise be entitled on questions relevant to class
certification." Id. (quoting Mazzola v. Roomster Corp., 849 F.
Supp. 2d 395, 410 (S.D.N.Y. 2012)).

**B. Analysis**

Kelly Auto argues that individualized questions, such as
consent or an established business relationship, mean that common
questions do not predominate as to either proposed class. Consent
is an affirmative defense to a TCPA claim. See Breda, 934 F.3d at
4 n.4 (holding with respect to § 227(b)(1)(A)(iii) that consent is
"an affirmative defense, which the caller has the burden to
prove"). As such, a question of consent is insufficient to warrant
striking either class, at least at such an early stage. See Smilow
v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003)
("[W]here common issues otherwise predominated, courts have
usually certified Rule 23(b)(3) classes even though individual
issues were present in one or more affirmative defenses."); see
also Rosenberg, 435 F. Supp. 3d at 318 ("[Defendant's] citation of
consent as a potential affirmative defense is insufficient to

[18]

warrant striking the putative class solely on the pleadings.");
Kristensen v. Credit Payment Servs., 12 F. Supp. 3d 1292, 1307 (D.
Nev. 2014) ("[C]ourts should ignore a defendant's argument that
proving consent necessitates individualized inquiries in the
absence of any evidence that express consent was actually given.").
Similarly, the issue of the existence of prior business
relationships is better resolved on a record.[2]

Kelly Auto also argues that the "Do Not Call Registry" Class
is an impermissible "fail-safe class." A "fail-safe class" is "a
class defined in terms of the legal injury." In re Nexium Antitrust
Litig., 777 F.3d 9, 22 (1st Cir. 2015). The issue is that
membership in the class "cannot be defined until the case is
resolved on its merits" and the liability of the defendant is
determined. MSP Recovery Claims v. Plymouth Rock Assur. Corp.,
Inc., 404 F. Supp. 3d 470, 485 (D. Mass. 2019) (quoting Young v.
Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012)). Such
a class "is prohibited because it would allow putative class
members to seek a remedy but not be bound by an adverse judgment—
either those class members win or, by virtue of losing, they are
not in the class and are not bound." In re Nexium, 777 F.3d at 22
n.19 (quoting Nationwide Mut. Ins. Co., 693 F.3d at 537)). "To
avoid such impermissible classes, in approving a proposed class

---

[2] So too, the issue of numerosity is better resolved at the class certification
stage with the benefit of a record.

definition, a court must ensure that eligibility as a class member is not dependent upon a legal conclusion." MSP Recovery Claims, 404 F. Supp. 3d at 485 (cleaned up). This class, defined by the objective fact of placing a number on the Do Not Call Registry, is not impermissibly based on a legal conclusion.[3] It is difficult to imagine how a plaintiff could define a class alleging "Do Not Call" Registry violations without requiring that class members placed their numbers on the Registry. This is a readily identifiable objective criterion that does not trigger fail-safe concerns. It would be simply inappropriate to strike the class allegations.

## ORDER

For the reasons stated above, Defendant's Motion to Dismiss (Dkt. 18) and Motion to Strike Class Allegations (Dkt. 21) are **DENIED**.

---

[3] Some courts have found similarly defined classes not to be impermissible fail-safe classes. See Johansen v. One Planet Ops, Inc., No. 16-00121, 2018 WL 1558263, at *3 (S.D. Ohio, Mar. 5, 2018) ("The class does not hinge on whether the putative class member has a claim under the TCPA. Instead, it is merely limited to those who received calls—it may include those who are entitled to relief, and it may include those who are not entitled to relief because, for example, they actually consented to receive the calls."); Waterbury v. A1 Solar Power, Inc., No. 15-2374, 2016 WL 3166910, at *5 (S.D. Cal. June 7, 2016) ("The Court can determine membership in Plaintiffs' putative classes using objective criteria); Panacci v. A1 Solar Power, Inc., No. 15-00532, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) ("Membership in both of Plaintiff's proposed classes can be determined without reaching any legal conclusions: to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants within a certain timeframe."). But see Bryant v. King's Creek Plantation, L.L.C., No. 4:20-0061, 2020 WL 6876292, at *3 (E.D. Va. June 22, 2020) ("This Court concludes that members of a TCPA class defined to include lack of consent, either explicitly or via the members' telephone listing on the National Do Not Call Registry, will automatically prevail on the TCPA . . . claim. . . . This creates an impermissible fail-safe class.").

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge